UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ASHTON A. SMITH,

        Plaintiff,                     Case No. 1:23-cv-637

v.                                           Honorable Paul L. Maloney

UNKNOWN WILLIAMS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff Ashton A. Smith has been granted leave to proceed *in forma pauperis*. (ECF No. 11.) The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 12.) On July 26, 2023, Plaintiff filed a statement seeking to have the matter excluded from early mediation. (ECF No. 17.) On August 1, 2023, the Court removed the matter from the early mediation program. (ECF No. 18.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims for failure to state a claim against

Defendants: (1) Plaintiff's individual capacity Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claims; (2) Plaintiff's First Amendment access to the courts claims; and (3) Plaintiff's Fourteenth Amendment due process and equal protection claims. The following claims against Defendants remain in the case: (1) Plaintiff's official capacity ADA and RA claims; (2) Plaintiff's First Amendment retaliation claims; and (3) Plaintiff's Eighth Amendment deliberate indifference claims.

## Discussion

### I. Factual Allegations

Plaintiff is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events of which he complains occurred there. Plaintiff sues Health Unit Manager Unknown Williams and Prison Counselor Unknown Sanborn. Plaintiff indicates that he is suing Defendants in their official and individual capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that he arrived at ICF on April 25, 2023. (*Id.*) He had a conversation with Defendant Williams that same day. (*Id.*) Plaintiff told Defendant Williams that he is legally blind and in need of the following accommodations: (1) a "reader writer" assistant; and (2) an accommodation for a cell on the ground floor, with no steps or stairs. (*Id.*) Defendant Williams told Plaintiff that he was aware of Plaintiff's needs and would try to meet them "to the best of [his] abilit[y]," but that ICF was "not a visually impaired friendly facility." (*Id.*) Plaintiff responded that he should not be at ICF because he was not a Level V inmate and that his placement at ICF went "directly against the recommendation of [his] corneal specialist and ophthalmologist." (*Id.*) Those specialists recommended that Plaintiff be placed at a facility "with the least propensity for violence, [assaults,] and fights" because a blow to Plaintiff's eye could rupture the globe and eyeball. (*Id.*, PageID.3.) Such a rupture could result in Plaintiff being completely blind and would

2

result in multiple surgeries. (*Id.*) Plaintiff alleges that his concerns had been disregarded in the past, and that his corneal was ruptured in September of 2021, leading to "an emergency open globe repair." (*Id.*)

Defendant Williams told Plaintiff that if he was that worried about his vision, Plaintiff should go into protective custody. (*Id.*) Otherwise, Defendant Williams said, Plaintiff would "have to be a big boy and go ahead out there." (*Id.*) Plaintiff responded that he was not asking for protection; instead, he was asking that Defendant Williams medically transfer him in accordance with his medical recommendation. (*Id.*, PageID.4.) Plaintiff indicated that he would file a grievance if Defendant Williams sent him "out there and refuse[d] to transfer [Plaintiff] to a medical facility." (*Id.*) Defendant Williams responded, "I don't care if you grieve me because I can and will make your medical conditions a lot worse for you[] at ICF[,] now [as a] matter [of] fact I will show you." (*Id.*) Plaintiff filed a grievance about his concerns on April 28, 2023. (*Id.*) He alleges that he was unable to use the exercise yard, phone, or showers for about a week. (*Id.*)

In early May of 2023, Plaintiff was sent offsite for an ophthalmologist appointment at the Kresge Eye Institute, where he received treatment for a corneal infection and had sutures removed from his left corneal transplant. (*Id.*, PageID.5.) The ophthalmologist "reiterated and noted that Plaintiff should be housed where there is the least [likelihood] of staff [assault] and prison fights." (*Id.*) Plaintiff had a second appointment on May 4, 2023. (*Id.*) Upon his return to ICF, he complained to a prison counselor about the ophthalmologist's recommendation. (*Id.*) Plaintiff, however, was issued a falsified misconduct ticket and taken to solitary confinement. (*Id.*) The ticket was ultimately dismissed, and Plaintiff was returned to general population. (*Id.*)

On May 7, 2023, Plaintiff was issued a falsified threatening behavior misconduct ticket and placed back in segregation. (*Id.*) He avers that this occurred after he continuously complained

about his accommodation needs not being met. (*Id.*) Plaintiff spoke to Defendant Sanborn about the issue on May 8, 2023. (*Id.*, PageID.6.) Defendant Sanborn told Plaintiff that he was in segregation because of his complaining. (*Id.*) Plaintiff responded that he would grieve Defendant Sanborn for failing to accommodate his needs. (*Id.*) Defendant Sanborn told Plaintiff that if he wrote a grievance, he would continue to receive more misconducts. (*Id.*)

Plaintiff contends that he has received a total of 5 misconducts for refusing to return to general population. (*Id.*) Plaintiff has refused to return to general population because he would "be placed in an extremely unsafe environment due to his impairment and need for specified accommodations." (*Id.*) Plaintiff alleges that he has received 120 days loss of privileges (LOP) "as a result of simply doing his best to remove himself from an extremely unsafe environment." (*Id.*) Plaintiff contends that staff issue the misconducts on behalf of Defendant Sanborn. (*Id.*) Plaintiff also contends that Defendant Sanborn has failed to provide Plaintiff with misconduct appeal forms and assistance in submitting such forms. (*Id.*) Defendant Sanborn has also failed to accommodate Plaintiff by appointing someone to read Plaintiff's mail to him. (*Id.*, PageID.7.) When Plaintiff asked for such assistance, Defendant Sanborn responded, "You didn't need help when you wrote [those] grievances on me and Nurse Williams." (*Id.*)

Plaintiff alleges that, to date, he is still in segregation, where he is continuously ordered to return to general population. (*Id.*) Defendant Sanborn and Williams continue to threaten Plaintiff with more misconducts and sanctions if he continues to grieve the issue. (*Id.*) Plaintiff is unable to appeal the misconducts and prepare grievances and appeals himself because of his visual impairment, and he "has to depend on the aid of random surrounding inmates." (*Id.*) Defendant Sanborn has also refused to turn in Plaintiff's legal writer program request forms to the law library. (*Id.*, PageID.8.)

Based on the foregoing, Plaintiff indicates that he is asserting the following claims for relief: (1) Eighth Amendment claims for deliberate indifference to serious medical needs; (2) First Amendment claims for retaliation and violations of the right to access the courts; (3) Fourteenth Amendment due process and equal protection claims; and (4) violations of the ADA and the RA. (*Id.*, PageID.8–10.) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.11.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

A.     **ADA/RA Claims**

Plaintiff contends that Defendants have violated his rights under the ADA and RA by failing to provide various accommodations for his visual impairment, including: (1) a "reader writer" assistant; (2) an assignment to a ground floor cell, with no need to access steps or stairs; and (3) a transfer to a medical facility with the least propensity for violence.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).[1] In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity."

---

[1] Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson Cnty.*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995)).

42 U.S.C. § 12131(2). The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

Given Plaintiff's allegations, the Court concludes that he has set forth plausible ADA and RA claims at this time. Plaintiff, however, has sued Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.) He seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.11.) The proper defendant under a Title II claim, however, is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). To the extent Plaintiff has sued all Defendants in their official capacities, his ADA and RA claims are, for all intents and purposes, against the State of Michigan as the real party in interest and, therefore, are properly brought. *See Brotherton v. Cleveland*, 173 F.3d 552, 560–61 (6th Cir. 2010). "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). The Court, therefore, will dismiss any individual capacity ADA and RA claims Plaintiff asserts against Defendants.

The MDOC and the State of Michigan (acting through Defendants) are not necessarily immune from Plaintiff's claims under the ADA. The ADA and the RA "validly abrogate[] state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus*, 591 F.3d at 482. In *Georgia*, an inmate alleged that certain conduct by prison officials independently violated his Eighth Amendment rights and Title II of the ADA. 546 U.S. at 157. Without deciding the accuracy of those allegations, the Court explained that the inmate's "claims for money damages against the

7

State under Title II were evidently based . . . on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment" because the guarantee against cruel and unusual punishment has been incorporated into the Due Process Clause of the Fourteenth Amendment. *Id.* As discussed *infra*, the Court has concluded that Plaintiff has alleged plausible Eighth Amendment claims premised upon a failure to accommodate his visual impairment by ensuring that he is housed in a safe environment. Thus, at this juncture, the Court will assume that Plaintiff's ADA and RA claims are not barred by sovereign immunity. Plaintiff, therefore, will be permitted to proceed on his official capacity ADA and RA claims against Defendants.

B.      **Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

1.      **First Amendment Claims**

a.      **Retaliation**

Plaintiff contends that Defendants retaliated against him for filing grievances, in violation of the First Amendment, by issuing false misconducts, placing him in segregation, and refusing to provide Plaintiff with accommodations for his visual impairment, including approval of his requests for a "reader writer" assistant.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

8

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has sufficiently alleged that he engaged in protected conduct by filing grievances and orally complaining about Defendants' actions or inaction. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."). Likewise, Plaintiff has sufficiently alleged that Defendants engaged in adverse action. The issuance of misconduct tickets and placement in segregation constitute adverse actions. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Further, given Plaintiff's visual impairment, the Court presumes for purposes of screening that the denial of accommodations for that impairment constitute adverse action as well.

Finally, Plaintiff must allege facts to support an inference that the alleged adverse action was motivated by the protected conduct. In his complaint, Plaintiff contends that when he told Defendant Williams that he would file a grievance if his request for a transfer to a medical facility was denied and if he was forced to return to general population, Defendant Williams responded, "I don't care if you grieve me because I can and will make your medical conditions a lot worse for

9

you[] at ICF[,] now [as a] matter [of] fact I will show you." (ECF No. 1, PageID.4.) Likewise, Defendant Sanborn told Plaintiff that he was placed in segregation because of his complaining, and that he would continue to receive more misconducts if he continued to write grievances. (*Id.*, PageID.6.) Plaintiff alleges further that Defendants continue to threaten him with more misconducts and sanctions if he continues to grieve the issue. (*Id.*) Given these allegations, Plaintiff has sufficiently alleged that Defendants' adverse actions were motivated by Plaintiff's protected conduct. Plaintiff's First Amendment retaliation claims, therefore, may not be dismissed on screening.

### b. Access to the Courts

Plaintiff also contends that Defendants violated his First Amendment right to access the courts by refusing to process his kites seeking assistance from the legal writer program. (ECF No. 1, PageID.9.) Plaintiff alleges that Defendants did so that Plaintiff would not "be able to bring this claim to court." (*Id.*)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a

plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff suggests that Defendants intended to impede his ability to file a civil rights action and, therefore, has sufficiently alleged that the underlying cause of action at issue is the type of

11

action for which there can be actual injury. Plaintiff, however, fails to allege facts from which the Court could infer any actual injury. The Sixth Circuit has noted that "[e]xamples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Here, Plaintiff was able to file the instant complaint raising his claims for relief. Because Plaintiff has failed to show any actual injury, the Court will dismiss his First Amendment access to the courts claims.

### 2. Eighth Amendment Claims

Plaintiff next contends that Defendants have violated his Eighth Amendment rights by willfully disregarding Plaintiff's "serious medical needs and medical conditions." (ECF No. 1, PageID.8.) He suggests that Defendants have disregarded a "known and [severe] risk" to Plaintiff. (*Id.*) Although Plaintiff's Eighth Amendment claim is premised upon Defendants' deliberate indifference to his medical needs and conditions, Defendants are not medical providers, and Plaintiff has not alleged that they have interfered with any prescribed medical treatment. Instead, Plaintiff appears to suggest that his Eighth Amendment rights have been violated because Defendants have subjected him to conditions of confinement that do not accommodate his medical needs, particularly his visual impairment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

13

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In his complaint, Plaintiff alleges that he arrived at ICF on April 25, 2023, and had a conversation about his visual impairment and need for accommodations with Defendant Williams that same day. (ECF No. 1, PageID.2.) Defendant Williams told Plaintiff that he was aware of Plaintiff's needs and would try to meet them "to the best of [his] abilit[y]," but that ICF was "not a visually impaired friendly facility." (*Id.*) Plaintiff responded that he should not be at ICF because he was not a Level V inmate and that his placement at ICF went "directly against the recommendation of [his] corneal specialist and ophthalmologist." (*Id.*) Those specialists recommended that Plaintiff be placed at a facility "with the least propensity for violence, [assaults,] and fights" because a blow to Plaintiff's eye could rupture the globe and eyeball. (*Id.*, PageID.3.) Such a rupture could result in Plaintiff being completely blind and would result in multiple surgeries. (*Id.*)

Defendant Williams told Plaintiff that if he was so worried, he should go into protective custody; otherwise, Plaintiff would "have to be a big boy and go ahead out there." (*Id.*) When Plaintiff asked for a medical transfer in accordance with the specialists' recommendation and noted he would file a grievance about the issue, Defendant Williams responded, "I don't care if you grieve me because I can and will make your medical conditions a lot worse for you[] at ICF[,] now [as a] matter [of] fact I will show you." (*Id.*) Subsequently, an offsite ophthalmologist "reiterated and noted that Plaintiff should be housed where there is the least [likelihood] of staff [assault] and prison fights." (*Id.*, PageID.5.) Despite such, Plaintiff alleges that Defendants have refused to accommodate Plaintiff by medically transferring him and by refusing to provide him with reading and writing assistance. Plaintiff also suggests that he has been placed in a no-win situation—he

refuses to leave segregation and return to general population because he would be "placed in an extremely unsafe environment due to his impairment and need for specified accommodations." (*Id.*, PageID.6.) Yet, Plaintiff alleges that Defendants continue to threaten Plaintiff with further sanctions if he does not comply. (*Id.*, PageID.7.) Although Plaintiff has by no means proven deliberate indifference, taking his allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's Eighth Amendment claims against Defendants may not be dismissed on screening.

### 3. Fourteenth Amendment Claims

#### a. Due Process

Plaintiff suggests that Defendants violated his Fourteenth Amendment procedural due process rights by issuing false misconducts for threatening behavior and refusing to return to general population. Plaintiff contends that he has been unable to appeal the misconducts because of his visual impairment.

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Here, Plaintiff suggests that he has been found guilty of class I misconducts for threatening behavior and class II misconducts for disobeying direct orders. *See id.*, Attachs. A & B. Plaintiff's class II misconducts do not implicate due process because Plaintiff could not have been denied

15

good time or disciplinary credits as a result of such convictions. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Furthermore, Plaintiff has not, and cannot, show that any class I misconduct conviction affected the length of his sentence. Plaintiff is serving sentences imposed in 2010 for offenses that occurred in 2008. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=619752 (last visited Aug. 8, 2023). A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Furthermore, Plaintiff's complaint is devoid of facts from which the Court could infer that any resulting sanctions caused atypical and significant hardship upon Plaintiff. Plaintiff does not suggest that he was sanctioned to segregation as a result of the misconducts; instead, he alleges only that he received a total of 120 days' LOP. (ECF No. 1, PageID.6.) LOP includes loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." *See* MDOC Policy Directive 03.03.105, Attach. E. Federal courts consistently have found that prisoners have no constitutionally

16

protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services).

Plaintiff fails to allege any facts suggesting that he was subjected to conditions which would implicate a liberty interest as a result of the allegedly false misconduct tickets. Plaintiff's Fourteenth Amendment due process claims premised upon such will, therefore, be dismissed.[2]

---

[2] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

### b.     Equal Protection

Plaintiff also suggests that Defendants have violated his Fourteenth Amendment equal protection rights by discriminating against him on the basis of his visual impairment. (ECF No. 1, PageID.10.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Here, a fundamental right is not at issue, and disabled individuals are not members of a protected class simply by virtue of their disabilities. *See City of Cleburne*, 473 U.S. at 445–46. Accordingly, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens*, 411 F.3d 697,

---

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's procedural due process and equal protection clauses, apply to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claims will be dismissed.

710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's allegations of discriminatory treatment, however, are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent that Plaintiff intended to assert a class-of-one equal protection claim, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection

19

claims are wholly conclusory. Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects. Plaintiff's conclusory allegations simply do not suffice to state a claim. Accordingly, his Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) Plaintiff's individual capacity ADA and RA claims; (2) Plaintiff's First Amendment access to the courts claims; and (3) Plaintiff's Fourteenth Amendment due process and equal protection claims. The following claims against Defendants remain in the case: (1) Plaintiff's official capacity ADA and RA claims; (2) Plaintiff's First Amendment retaliation claims; and (3) Plaintiff's Eighth Amendment deliberate indifference claims.

An order consistent with this opinion will be entered.

Dated: August 16, 2023                     /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge